Law Library

# IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM ) CRIMINAL CASE NO. CF0479-07
)
vs. )
)
EDWARD JOSEPH SAN AGUSTIN, ) DECISION AND ORDER
)
Defendant. )
)
)
)

This matter came before the Honorable Alberto C. Lamorena III on February 25, 2009 on Defendant's two Motions to Dismiss. Attorney David G. Rivera appeared on behalf of the People of Guam. Appearing on behalf of Defendant was Attorney Maria G. Fitzpatrick. After reading the parties' briefs and hearing the parties' arguments, the Court took the matters under advisement. The Court now issues its Decision and Order.

## FACTUAL HISTORY

On October 18, 2007, the grand jury returned an indictment charging the Defendant with multiple counts of burglary, robbery, theft and criminal mischief. It is alleged that Defendant broke into a vehicle on September 14, 2007, stealing a 9 mm pistol, which was subsequently used on September 20, 2007 and September 24, 2007 in the robberies of the Dededo Pachinko game room and Tai Sho game room. It is also alleged that Defendant was responsible for the theft of the vehicle of the owner of the Tai Sho game room.

## DISCUSSION

### I. Failure to Present Exculpatory Evidence

1

The dismissal of the indictment is considered a drastic step and is generally disfavored as a remedy. *See U.S. v. Rodgers*, 751 F.2d 1074, 1076-77 (9th Cir. 1985); *People v. Muna,* 999 F.2d 397 (9th Cir. 1993). Dismissal of the indictment prior to trial based on errors in the Grand Jury proceedings such as failure to present exculpatory evidence is warranted upon showing that the defendant is prejudiced by the error. *See Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 255 (1988).

Pursuant to 8 G.C.A. § 50.46 "the grand jury shall receive only evidence presented to it by the prosecuting attorney but the prosecuting attorney shall submit any evidence in his possession which would tend to negate guilt and the grand jury shall weigh all the evidence submitted." 8 G.C.A. § 50.46. It is the Court's view that § 50.46 does not require the Government to produce every shred of evidence which might possibly exculpate the defendant, but only evidence that clearly negates guilt. *See People v. Kloulubak*, Crim. Case No. CF116-87, (Super. Ct. Guam November 17, 1988). The test is whether the prosecutor failed to disclose exculpatory evidence material to the very heart of the case. *See People v. Sablan*, Crim. Case No. 85-0024A (D. Guam App. Div. 1986); *People v. John Aguon Jesus*, Crim. Case No. CF0164-87 (Super. Ct. Guam 1988). In a motion brought pursuant to § 50.46, the Defendant assumes a greater burden of proof in attempting to negate Defendant's guilt than does the Prosecuting Attorney in attempting to show reasonable cause. *People v. Gerber, et al.*, Crim. Case No. CF149-78 (Super. Ct. Guam 1978).

The Defendant argues that there are six examples of exculpatory evidence that the People failed to disclose to the grand jury. The first evidence argued to be exculpatory is a statement made by the Defendant that he did not do anything wrong. The Defendant argues that this statement needed to be presented to the grand jury because it tends to negate guilt. This statement, however, was not in response to any questions by investigators, and provides no factual contentions other than a non-specific denial. It is difficult to determine how the introduction of this statement to the grand jury would have tended to negate guilt.

The second piece of evidence alleged to be exculpatory is a description of the suspect made by Rebecca Q. Mar, who described the masked suspect as appearing to be of Micronesian

2

descent and approximately 5'8"-5'10" tall. Her claim was based on her account of the visible nose area of the suspect being dark colored. The Defendant is of Chamorro descent and is 5'6" tall. Eyewitness descriptions are usually vague, and a slight difference between the actual physical properties of a suspect and what an eyewitness describes does not rise to the level of materiality such that its omission prejudices a defendant, especially here where the suspect was wearing a mask and did not spend considerable time in the presence of the witness.

The third contention by Defendant is that a sum of money recovered from a suspect in a different matter was consistent with the money at issue in this matter, making it likely that the Defendant was not the perpetrator of the robbery. However, a review of the police report indicates that the only similarity between the money lost in the robbery and the money recovered from the other suspect was the type of rubber bands used to hold the money together. The amount of money, the bag it was in, and the way it was folded was different from the funds taken from the victim. This evidence does not tend to negate the guilt of Defendant.

Defendant then claims that the People failed to disclose to the grand jury the results of the fingerprint testing performed on the entrance door. Of the 56 latent prints, three were found to be of value for identification purposes, and none of these three matched Defendant. It is speculative and not reasonable to assume that since three of the prints were not matching, that none of the rest would either.

Defendant's last claims regard the involvement and testimony of Jolyn Mesa. Defendant alleges that the People failed to disclose that Ms. Mesa was not the suspicious woman accompanying the suspect during the robbery, that she used methamphetamines, was suicidal and receiving treatment at the Department of Mental Health, did not know of any illegal activities of the Defendant, and changed her statements to the police after reading about the robberies. There were no representations to the grand jury that Ms. Mesa accompanied the suspect during the robbery, and it is unclear why a failure to highlight this evidence is prejudicial to the Defendant. Defendant similarly does not state why Ms. Mesa's use of methamphetamines needed to be disclosed to the grand jury. It is not alleged that her statements were taken while she was under the influence, nor is it alleged that her statements were made in exchange for preferential

3

treatment by the People. It is likewise unclear why Ms. Mesa's suicide attempt is exculpatory to the Defendant. The statements made by Ms. Mesa alleged to be exculpatory because they lessen her credibility are far outweighed by the statements given that led to the discovery of highly probative evidence that heighten her credibility.

None of the omissions alleged by Defendant have been shown to be prejudicial to him, nor are they the type of omissions material to the heart of the case. It is not enough that the omitted evidence could conceivably be construed to lessen the likelihood that the Defendant committed the offense, as this would create an impossible standard for the People to achieve. The omission must have substantially influenced the grand jury's decision to indict, and the examples put forth by the Defendant do not rise to this level.

## II.     Definition of Burglary and Habitable Property

The elements of burglary include entering or surreptitiously remaining in any habitable property. Under Title 9 G.C.A. §34.10(b), habitable property means any structure, vehicle or vessel adapted for the accommodation or occupation of persons. Defendant argues that the count of Burglary as a Second Degree Felony must be dismissed as a matter of law because the vehicle at issue was not modified or adapted for the accommodation or occupation of people. The People argue that the definition includes an ordinary vehicle, as it accommodates and can be occupied by people, and that no 'special adaptation' is required.

Though no jurisdiction has the exact definition of habitable property as Guam, many jurisdictions that have also used the Model Penal Code as their source have required the adaptation to be for the 'overnight accommodation' of persons. See *State v. Pace,* 602 N.W.2d 764 (Iowa 1999), *Timothy v. State,* 90 P.3d 177 (Alaska App. 2004). This is because burglary laws are not designed to protect property and ownership, but rather to allow people to feel secure in their homes. "Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation-the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime to escape ... [t]he laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so

4

much as to forestall the germination of a situation dangerous to personal safety." *State v. Nible*, 200 Cal.App.3d 838, 844, 247 Cal.Rptr. 396 (Cal.1988).

The word 'adapted' as provided in Guam's statute is critical to the definition, as it implies that the structure, vehicle, or vessel has been modified or equipped such that it would increase the chances that an intrusion would endanger personal safety. If the Legislature wanted to protect every vehicle, the addition of "adapted for the accommodation or occupation of persons" would have been unnecessary. It is, in common law, the protection of the sanctity of the home, and not personal property, which is the basis of the burglary statute. For these reasons, the definition of burglary does not cover ordinary vehicles which have not been equipped or modified such that an entrance by an unauthorized individual would present a heightened danger to personal safety.

## CONCLUSION

Based on the above, Defendant's Motion to Dismiss for Failure to Present Exculpatory Evidence is hereby DENIED. Defendant's Motion to Compel is hereby GRANTED, and the first charge of the indictment, Burglary (as a Second Degree Felony) shall be DISMISSED. A trial setting will be held on May 27, 2009 at 3:00 P.M.

**IT IS SO ORDERED** this ___ 7th ___ day of May, 2009.

_____
**Alberto C. Lamorena III**
Presiding Judge
Superior Court of Guam

5